LENA RAGAN, Appellee, v. PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY, Appellant.

No. 40183.

March 11, 1930.

*Raymond N. Klass,* for appellant.

*Bush & Bush,* for appellee.

EVANS, J.—I. The insurance contract was entered into on November 15, 1927, in the city of Davenport, which was the home of the insured. The insured was a boy 17 years of age,  and at that time was employed as a machinist's helper in the shops of the Chicago, Rock Island & Pacific Railway Company at Silvis, Illinois. The insurance term was one year from the date of the policy. The total premium for the term was $26.20. The policy form presented three alternative plans or methods for the payment of the premium for the full term. One of these plans provided for payment in six equal installments, each installment being payable out of the wages of the insured for a specified month. Pursuant to that plan, the insured was to sign paymaster orders, directed to his employer, and authorizing the employer to deduct from his wages and pay to the company the particular installment. This was the plan adopted in this insurance contract. The first installment was to be paid out of January wages, and the successive installments were to be paid out of the wages accruing in the successive months. Our consideration of the details of this plan becomes necessary, in order to determine whether the insured was, at the time of his death, in default in the payment of premiums under the terms of the policy. If he was in default, then other questions arise as to the effect of such default. The application of the insured was made a part of the policy. The provisions for the payment of premium are contained in such application. The following quotations therefrom will be a sufficient indication of the contents of the policy in that regard:

"I agree to pay for said policy (monthly—annual) premium of $26.20 in six installments of $4.40 and $4.35 each on the following plan: * * *

"To Paymaster
"C. R. I. & P. * * * R.R.

"For value received, I hereby request the amount of money herein stated to be deducted from my wages earned during the several months specified, and paid to the Provident Life and Accident Insurance Company, or its duly authorized agent, who presents this order for collection.

"From wages earned in the month of

| | | | | | |
|---|---|---|---|---|---|
| Jan. | $4.40 | May | $4.35 | Sept. | $......... |
| Feb. | 4.40 | June | 4.35 | Oct. | ......... |
| Mar. | 4.35 | July | ......... | Nov. | ......... |
| Apr. | 4.35 | Aug. | ......... | Dec. | ......... |

"These payments cover the premium on a policy or policies issued to me by said Provident Life and Accident Insurance Company, bearing even number and date herewith; if this order directs that premium shall be paid in four installments, the payment of each installment shall continue said policy in force for respective period of three months each. *If this order directs that premium shall be paid in six installments, the payment of each installment shall continue said policy in force for respective periods of two months each.*"

As already indicated, the six-installment plan was the one adopted, and we have italicized it above. The policy required no payment of premium prior to the installment out of January wages. The paymaster order was delivered to the company, and it collected its premium thereunder from the employer of the insured. It collected the installment from the January wages on February 24th, and collected the installment from the February wages on March 25th. Pursuant to the same course of business, it would have collected the third installment out of the March wages on April 25th. On April 25th, however, the insured was accidentally killed, and the policy matured instanter, if at all. No specific date was fixed for the actual payment of the installments to the company. It would, therefore, have the right, under the paymaster order in its hands, to receive the same from the employer of the insured within a reasonable time after the wages were earned. Manifestly, the installment from the January wages could not be due prior to February. The record does not disclose the date of any pay day for wages

earned, nor does it disclose the pay-roll routine adopted by the employer. The company, for aught that appears herein, accepted the payments on the 24th and 25th, respectively, of the succeeding month, as a compliance with the terms of the policy. Nor did it raise any question in that regard. Pursuant to this method of payment, if the company had received on April 25th the third installment for the March wages, performance on the part of the insured would be perfect. Such payment was not received. This was the date on which the accidental death of the insured occurred. Unless, therefore, there was an actual default before the accidental death of the insured, none could arise thereafter, as for want of payment of premium. The company was doubtless entitled to deduct the installment from the indemnity, and was, perhaps, entitled to deduct the full annual premium from such indemnity; but it has made no claim of that kind. It does further appear that the insured quit the services of his employer on March 30th, and that the employer paid him off without retaining the requisite amount necessary to honor the paymaster order in the hands of the company. What amount was due the insured as wages, and what amount his employer paid him as his March wages, do not appear; nor does it appear whether the insured knew that the employer had not retained sufficient to meet such installment.

It is the contention of the company at this point that the quitting of the service and the collection of his entire wage by the insured constituted a breach of the contract. There was noth-ing in the policy which purported to guarantee continuity of employment, nor was the collection of his wages, in and of itself, a breach of any provision of the policy. On the contrary, the policy contemplated just such a contingency, and bound the insured to make payment of the installment in such event. If, therefore, notwithstanding the quitting of the service on March 30th, the insured had paid the installment to the company on or before April 25th, he would have met the requirements of the policy. The default, if any, did not occur on March 30th.

With the foregoing details before us, we may turn to a consideration of the theory of the defendant, and the construction which it puts in its brief upon the policy. This theory is

that the insured was, at all times subsequent to the date of the policy, in default in the payment of premium, and that the policy was, therefore, in suspense, and without force or effect in favor of the insured until he could catch up with his arrearage; that the payment of February 24th paid his arrearage for two months, and up to January 15th; that the payment of March 25th paid his arrearage for two more months, and up to March 15th; that, therefore, he never in fact made up his arrearage, and never in fact had any insurance, because of the arrearage. As against this, the plaintiff contends that the policy expressly provided that the payment of each installment should *continue* the policy in force for two months. The language of the policy in that respect is set forth above in our quotations therefrom. Under the theory of the defendant, the policy would be in suspense for a period of at least six months, even though the insured complied strictly with its every provision. It will be noted that, by the plan of installment-payment adopted, the *earned* premium upon the policy for the first six months of the insurance term outran the *maturity* of the stipulated payments. After six months, the *maturity* of stipulated payments outran the *earned* premium. Upon payment of the last installment out of the June wages, the policy would have been fully paid up, with some months of the term yet to run. It is true, therefore, that, on February 15th, three months' *earned* premium had accrued upon the policy. But there was no *default* on that account. There was no provision that premiums should be *paid* as fast as *earned*. On the contrary, the *payment* of *earned* premiums was expressly *deferred* by the plan adopted. What motive or consideration could there be to the insured to pay an installment in February, if it was not effective to keep the policy in force? Under the very terms of the policy, it was not requisite that the insured should *keep pace with the accrual of earned premiums*. It was enough that he pay the deferred installments in conformity to the terms of the policy. It is quite possible that, if the insured had lived a few days longer, he might have become in default. But that is a speculation over which we need not ponder.

We are of opinion that no default in the payment of installments has been shown.

II. One of the defenses set up is that the insured met his

death as a result of violation of law. Under the provisions of the policy, no insurance benefit would accrue in such event.  At the time he was killed, the insured was riding in a freight car on the Chicago, Burlington & Quincy Railway, in the state of Missouri. So far as appears, he was the sole occupant of the freight car. The defendant pleaded a particular statute of the state of Missouri, and pleaded that the insured was violating such statute. Such statute (Revised Statutes of Missouri, 1919) was as follows:

"Section 3662. Climbing upon cars when in motion. — If any person, minor or adult, shall climb upon, hold to or in any manner attach himself to any locomotive engine or car, while the same shall be in motion, or running into or through any city or town in this state, he shall be deemed guilty of a misdemeanor: *Provided,* that this section shall not apply to any employee of the railroad company, nor to any passenger, nor to any other person who may be acting by permission or under the rules of the company then operating the road."

There is no evidence in the record of the circumstances under which the insured entered into occupancy of the freight car. There was no evidence of "climbing upon cars when in motion," or that he attached himself "to any locomotive engine or car, while the same shall be [was] in motion." The plain purpose of this statute was to forbid the boarding of trains while they are moving. There is no evidence, therefore, of the violation of this particular section, though it be granted that the insured was wrongfully upon the train, and was there in violation of the rules of the railway corporation. It may be true that he was violating other statutes of the state of Missouri. But the only question before us at this point is whether he was violating this particular section. We think he was not. In view of this conclusion, we need not consider the question whether his death resulted from his violation of law. The train was wrecked, and the insured lost his life in the wreckage. He did not contribute in any degree to the wrecking. Whether his mere wrongful presence there should be deemed an operating cause of his death is a question which has given rise to much discussion in the cases, and which involves some fine distinc-

tions. Some of our cases on the subject are: *Rowe v. United Com. Trav. Assn.*, 186 Iowa 454; *Jones v. United States Mut. Acc. Assn.*, 92 Iowa 652; *Prader v. National Masonic Acc. Assn.*, 95 Iowa 149; *Matthes v. Imperial Acc. Assn.*, 110 Iowa 222. We express no present opinion on the question.

The conclusion which we have reached in the first division hereof renders it unnecessary for us to consider the application of Section 8959, Code, 1927, to the case. Under that section it  would be requisite upon the company to give to the insured a 30-day notice, before it could forfeit the policy for nonpayment of premium. The appellant claims to avoid the effect of this statute on the theory that the policy was an Illinois contract. The claim that it was an Illinois contract is predicated upon the fact that the employment of the assured was at Silvis, in Illinois, and that the company received its installments from the employer at that place. The argument is that this made the policy installments payable in Illinois, and that the contract thereby became an Illinois contract. We can accept neither the premise nor the conclusion. There is no provision of the policy that requires payment to be made in Illinois. The policy was in fact issued in Iowa, where the insured was a resident. The company, though a Tennessee corporation, had a license, pursuant to our statutes, to do business in Iowa. Though it is perhaps unnecessary, we may as well say what seems patent to us, that the contract was an Iowa contract, and subject to the provisions of Section 8959. We think, also, the burden of showing forfeiture was on the defendant. So that, from whatever point of view we consider the controversy, it is rendered clear that the policy had not yet been forfeited or suspended.

III. Some claim is made by the defendant that the insured had changed his occupation; that he was a machinist's helper when he was insured; and that he voluntarily became a "tramp" and a "bum" and other things. This characterization is a mere matter of epithet. There was no provision in the policy against the quitting of work, nor, for that matter, a change in occupation. If he had changed to a more hazardous occupation, he would become subject to a certain classification of hazards. This

was not a case of change of occupation, in any other sense than that the occupation of the insured had ceased. No question of public policy is involved.

We think the district court properly found judgment for the plaintiff, and such judgment is, accordingly,—*Affirmed.*

MORLING, C. J., and FAVILLE, KINDIG, and GRIMM, JJ., concur.