NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff, v. LAW-RENCE MAST, and AMON MILLER, HENRY MILLER and IRVIN MILLER, doing business as Miller Brothers of Harrington, Delaware, and BENJAMIN STANFORD, Defendants.

*(July 28, 1959.)*

CHRISTIE, J., sitting.

*James L. Latchum* and *C. W. Berl, Jr.* (of Berl, Potter and Anderson) for plaintiff.

*Jackson Raysor* (of Tunnell and Raysor) for defendants, Lawrence Mast and Miller Brothers.

*Edmund N. Carpenter, II,* (of Richards, Layton and Finger) for defendant, Benjamin Stanford.

Superior Court for New Castle County, No. 996, Civil Action, 1958.

CHRISTIE, J.:

The pertinent facts giving rise to this action are undisputed.

On June 18, 1957, Nationwide Mutual Insurance Company entered into an automobile liability policy, being Policy No. 52-592-783, with Lawrence Mast to cover a 1955 Ford Stake Body Truck then owned by Mast.

The policy contained a bodily injury coverage clause which read as follows:

"Coverage F—Bodily Injury Liability—(automobile) To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily

injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

Insuring Agreement V(a) (4) of the policy provided:

"Newly Acquired Automobile—an automobile, ownership of which is acquired by the Named Insured or his spouse if a resident of the same household , if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the Named Insured and such spouse on the date of its delivery, and (ii) the Named Insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required under coverages E, F and division 1 of coverage G if the newly acquired automobile replaces an owned automobile covered by this policy * * *"

The policy also contained an exclusion stated in the following words:

"Exclusions—Automobile—This Policy Does Not Apply:— (c) under coverages E and F, while the automobile is used for the towing of any trailer owned or hired by the Insured and not covered by like insurance in this company; or while any trailer covered by this policy is used with any automobile owned or hired by the Insured and not covered by like insurance in the Company * * *"

On or about July 24, 1957, Mast acquired ownership and possession of a 1946 Kentucky flat bed trailer.

On September 11, 1957, Mast acquired ownership and possession of a 1949 G.M.C. truck tractor.

Mast retained ownership and possession of the Ford Stake Body, the Kentucky trailer and the G.M.C. Tractor until October 20, 1957, when he delivered the Ford Stake Body to Simpson

Ford, Inc. of Harrington, Delaware for repossession by Maryland Credit, of Easton, Maryland, under a conditional sales contract.

On October 28, 1957, Mast was engaged by Miller Brothers of Harrington, Delaware, to do a hauling job. He drove his G.M.C. Tractor and Kentucky Trailer to the Millers' plant in Harrington where the trailer was loaded with switch ties for delivery to Koppers Company, Inc., in Newport, Delaware. Mast drove the ties to Newport, and as they were being unloaded by Benjamin Stanford, an employee of Koppers, and others, some of the ties fell and injured Stanford.

Stanford commenced a suit in the Superior Court for New Castle County (C. A. No. 479, 1958) on April 30, 1958, against Millers and Mast for personal injuries arising from the accident above mentioned. Nationwide entered an appearance for Mast in that suit, under reservation of right.

On October 29, 1957, Mast for the first time notified Nationwide of the acquisition and ownership of the G.M.C. Tractor and the Kentucky Trailer and asked Nationwide to transfer the coverage of the existing policy (No. 52-592-783) from the Ford Stake Body Truck to the said tractor and trailer. Favoring Mast's request, Nationwide, that same day, cancelled Policy No. 52-592-783 and issued Policy No. 52-592-889, covering the G.M.C. Tractor and the Kentucky Trailer.

Subsequently, on August 26, 1958, Nationwide brought this action for a declaratory judgment, seeking an adjudication that it is not under any obligation to defend Mast or to pay any damages recovered against him.

The central issue in this case is whether the tractor-trailer rig involved in the accident was a replacement for the insured vehicle within the meaning of clause V(a) (4) (i) of the insurance policy.

"Replace" is thus defined:

"3 * * * b. To provide or produce a substitute or equivalent in place of (a person or thing) * * *" *II Shorter Oxford English Dictionary* 1706 (3rd Ed. Reprint 1947).

There is no evidence that the word "replacement" has a meaning peculiar to the insurance field, or that the parties intended any different meaning, so the ordinary meaning must govern.

A clear case of replacement occurs when an old vehicle is disposed of, and a new vehicle of equivalent use is substituted. The problem here narrows to the effect of temporary retention of the old vehicle, after the new vehicle has been procured.

5A *Am. Jur.*, Automobile Insurance, § 85, p. 83, speaks as follows on the point:

"One of the primary questions to be determined in respect to a 'replacement' provision in an 'automatic insurance' clause is, of course, whether the newly acquired automobile 'replaces' an automobile described in the policy. In this respect, the fact that the car described in the policy was retained by the insured and was in a legally usable condition has been held not to preclude transfer of coverage to the newly acquired car, where such car was actually purchased to replace the first car for the same use." Citing *Merchants Mut. Casualty Co. v. Lambert,* 1940, 90 N. H. 507, 11 *A.* 2d 361, 127 *A. L. R.* 483; 34 *A. L. R.* 2d 945.

Although the *Merchants* case may not fully support the broad rule quoted from *Am. Jur.,* the approach taken in that case is significant and the following language is particularly pertinent:

"The plaintiff, if it had seen fit, might have inserted a provision that the insurance should not attach to the replacing car until the insured had parted with the ownership and possession of the replaced car, but in the absence of any such provision in the policy, these factors of the situation were properly regarded by the trial court as indecisive." 11 *A.* 2d 361, 362-363.

Similarly, in *Dean v. Niagara Fire Insurance Co.*, 1937, 24 *Cal. App.* 2d *Supp.* 762, 68 *P.* 2d 1021, it was held that the fact that the car described in the policy was still registered in the insured's name, while the car he was driving at the time of the accident was not yet registered in his name, did not preclude coverage of the second car, the court emphasizing that coverage of the replacing car commenced with its delivery, provided the insurer acquired the legal status of registered owner either prior or subsequent to delivery.

The *Dean* decision, however, does not indicate whether Dean still owned both cars at the time of the accident, or whether he had disposed of the old car and merely neglected to register the new one, and if he had disposed of the old car, how long he had retained it before disposal.

The language found in *Mitcham v. Travelers Indem. Co.*, 4 *Cir.*, 1942, 127 *F.* 2d 27, is inapplicable to the present case since in the *Mitcham* case, the second car was bought as an additional vehicle, and with a trade-in of a relative's car, and could not be considered a replacement for the original insured car.

■ Although the point is not clearly established, I conclude that temporary retention of possession of the vehicle described in the policy does not, *ipso facto*, prevent the extension of coverage to the newly acquired automobile as a replacement within the meaning of the policy. Application of this rule is particularly appropriate since ownership of the vehicle, which was alleged to have been replaced, ceased prior to the accident.

■ It, therefore, becomes necessary to examine the activities of Lawrence Mast more closely to see whether a replacement did occur. As plaintiff has here moved for summary judgment, the facts must be viewed in the light most favorable to Mast, the defendant.

It appears that Mast was engaged in the hauling business. He acquired a 1955 Ford Stake Body Truck in May, 1957, and

plaintiff's policy insuring that vehicle was issued June 18, 1957. Finding the described vehicle to be inadequate, Mast purchased the Kentucky Trailer in July, 1957. He then removed the stake body from the described vehicle and by adding a fifth wheel to the Kentucky Trailer, used the two as a single unit. This also proved to be unsatisfactory so that, on September 11, 1957, defendant reconverted the described vehicle and purchased a 1949 G.M.C. Tractor for use with the Kentucky Trailer. The tractor-trailer combination worked well, so he allowed the Ford Stake Body Truck to be repossessed.

It appears that Mast was experimenting to see which vehicle best suited his purposes. When he finally decided on the tractor-trailer combination, he deliberately handed over the other vehicle for repossession.

I find that at the time the policy was signed, the intent of the parties was to insure the described vehicle and any reasonable replacement, *i.e.* one adapted to the same commercial use. The tractor-trailer combination was a reasonable replacement and, thus, was within the contemplation of the parties.

I conclude that the vehicle involved in the accident was a replacement within the meaning of the policy provision. Consequently, notice of such replacement within thirty days was not required and coverage was automatic.

The trailer exclusion clause (quoted as (c) *supra*) has no application to the present case since I have held that both tractor and trailer were "covered by like insurance in the company."

Plaintiff's motion for summary judgment is denied.