No. 44,600

Continental Casualty Company, a Corporation, *Appellant*, v. Employers Mutual Casualty Company, a Corporation, *Appellee*.

(422 P. 2d 560)

Opinion filed January 21, 1967.

*H. E. Jones,* of Wichita, argued the cause, and *A. W. Hershberger, Richard Jones, Wm. P. Thompson, Jerome E. Jones, Robert J. Roth, William R. Smith* and *Robert J. O'Connor,* all of Wichita, were with him on the brief for the appellant.

*Robert C. Foulston,* of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Robert L. Howard, Charles J. Woodin, Mikel L. Stout, Ronald K. Badger, Benjamin C. Langel* and *Phillip S. Frick,* all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an action between two insurance companies to settle their differences arising out of an automobile accident which killed Robert M. Kiker resulting in claims against his estate. The Continental Casualty Company (plaintiff-appellant) contends that its insurance was excess, and that the Employers Mutual Casualty Company (defendant-appellee) was primarily liable. The trial court held to the contrary.

The question presented on appeal is whether the 1962 Chevrolet

station wagon under the stipulated facts replaced the 1958 Cadillac described in the appellee's policy of insurance.

On April 11, 1962, the appellant issued an automobile policy to the S. A. Long Company, Inc., of Wichita, Kansas, providing liability insurance for the employees of the S. A. Long Company. On August 4, 1962, the appellee issued an automobile liability policy to Robert M. Kiker insuring two automobiles owned by Kiker, a 1958 Cadillac and a 1957 Oldsmobile.

On September 16, 1962, after having become an employee of S. A. Long Company, Kiker purchased a third automobile, a 1962 Chevrolet. He did not trade in the 1958 Cadillac, but did transfer the license tag from the 1958 Cadillac to the 1962 Chevrolet. The record does not disclose whether or not additional tags were purchased. The 1962 Chevrolet was insured by Kiker for comprehensive and collision insurance with Motors Insurance Corporation at the time of purchase.

On the 14th day of October, 1962, at a social gathering at the Kiker home, Mr. Kiker was specifically asked by Mrs. Lee Peckham and Taylor Peckham, his insurance agents for the appellee, if he desired to have the 1962 Chevrolet added to the policy written by the appellee. Mr. Kiker replied that he did not desire this to be done, and that the liability insurance was to be written through S. A. Long Company, his new employer, and that it was part of his compensation. He instructed the agent not to insure the 1962 Chevrolet.

While driving the 1962 Chevrolet in the course of his employment with the S. A. Long Company, Kiker was involved in an accident on October 17, 1962. Kiker received fatal injuries and Stafford, the driver of the other vehicle, was injured. As a result of this accident claims were made by Stafford and his insurance carrier. These claims were settled for $14,925 by the appellant and the appellee. Each of the companies paid one-half of this amount through an agreement whereby each company reserved the right to bring suit to establish the liability of the other.

This action followed in which the appellant sued the appellee for $7,462.50, and the appellee filed a counterclaim against the appellant for an identical sum.

The 1958 Cadillac was not sold by Mrs. Kiker, after the death of her husband, until February 26, 1963, when it was sold and removed from the renewal policy of the appellee.

The appellee's policy was written for a period of six months, from August 4, 1962, to February 4, 1963. The policy was renewed on February 4, 1963, and the renewal policy was written to cover the 1958 Cadillac.

The parties agreed that in the event the 1962 Chevrolet station wagon was a replacement vehicle for the 1958 Cadillac, the appellee's insurance is primary and the insurance provided by the appellant would be excess.

The purchase and delivery of the 1962 Chevrolet was more than thirty days prior to the accident.

Both Mr. and Mrs. Kiker drove the Oldsmobile and the Cadillac, but the Cadillac was driven primarily by Mr. Kiker.

Kiker's last regular employment prior to going to work for the S. A. Long Company was for Bulger Cadillac as a salesman. His employment with S. A. Long Company was that of a traveling salesman.

The trial court held on the agreed stipulation of facts, and as a matter of law, the 1962 Chevrolet station wagon owned by Kiker was not a replacement for the 1958 Cadillac previously owned by him, and that the appellee was not liable as an insurer. Judgment was entered for the appellee in the sum of $7,462.50 on its counter-claim.

On the stipulated facts a question of law is presented as to whether Chevrolet *replaced* the Cadillac.

The insurance policies here under consideration have been stipulated by the parties into the record. The appellee's policy provides coverage for an automobile acquired by the insured if it replaces the vehicle named in the policy.

On this point only one provision of the appellee's insurance policy need be construed or examined to determine the question. It reads as follows:

"If the named insured disposes of or replaces a private passenger, farm or utility automobile or, with respect to Part III, a trailer, he shall inform the company during the policy period of such change. If the named insured acquires ownership of an additional private passenger, farm or utility automobile or, with respect to Part III, a trailer, he shall inform the company within thirty days following the date of its delivery. . . ."

In the instant case the accident occurred thirty-one days after the policy was issued, but during the policy period. The parties agree that under these circumstances, if the 1962 Chevrolet is a replacement for the Cadillac, notice to the company prior to the

accident was unnecessary to impose liability under the policy. If, however, the 1962 Chevrolet was an additional automobile, it was necessary to give notice under the policy within thirty days after purchase to invoke coverage. The parties conceded in argument that here no notice was given to the appellee that an additional automobile had been purchased within the thirty-day period.

The appellant contends the 1962 Chevrolet was a replacement vehicle for the 1958 Cadillac, and would therefore be entitled to automatic coverage under the appellee's policy. To substantiate its position the appellant argues the policy in this case makes no requirement for coverage that the insured "dispose" of any vehicle named or listed in the policy; that a reading of the above clause would clearly indicate that the writer of the policy anticipated a listed vehicle might be "replaced" without disposition of the replaced vehicle. To substantiate this argument the appellant cites the words "disposes of or replaces" in the above quoted clause.

In the absence of evidence that the word "replacement" had a meaning peculiar to the insurance field or that the parties intended any different meaning in the automobile liability policy, the usual and ordinary meaning of the term, that is, to provide or produce a substitute or equivalent in place of a person or thing, would govern. (*Nationwide Mut. Ins. Co. v. Mast, et al.,* 52 Del. 127, 153 A. 2d 893 [1959].)

A clear case of replacement occurs when disposition has been made of an old vehicle described in the policy, and a new vehicle of equivalent use is substituted.

Other jurisdictions have considered the question under varying factual situations. A proposition generally supported is that a vehicle is a replacement if procured after issuance of the policy, and there has been a disposition of the vehicle described in the policy or the vehicle described in the policy has become inoperable.

In the case of *Maryland Indemnity v. Steers,* 221 Md. 380, 157 A. 2d 803 (1960), the insured owned an Oldsmobile which was listed as the insured vehicle. The Oldsmobile became inoperable, and although the insured acquired new license tags for it with the expectation of repairing it, the auto was eventually dismantled without having been repaired, and the insured acquired a Dodge which he later sold to acquire the Ford with which he had an accident. The court held since the Oldsmobile was actually inoperable when the Dodge was acquired, the Dodge was a replacement for it, and since the Ford replaced the Dodge, the insurer's

liability was the same as if the Ford had replaced the Oldsmobile directly.

In *Merchants Mutual &c. Co. v. Lambert*, 90 N. H. 507, 11 A. 2d 361, 127 A. L. R. 483 (1940), the insured owned a 1930 Pierce-Arrow which was out of repair and not fit to be driven on the public highway. The insured then purchased a 1935 Pierce-Arrow and put it to the same use as the 1930 Pierce-Arrow. He did not dispose of or transfer the tags or registration from the 1930 automobile to the 1935 automobile. The court held that the 1935 automobile was shown by use alone to have replaced the 1930 Pierce-Arrow. In the opinion the court said:

". . . The language of the policy is to be construed in accordance with the principle that 'the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would have understood them to mean.' *Watson v. Insurance Co.*, 83 N. H. 200, 202. We think it plain that any reasonable person in the position of the defendant Lambert would have understood from the language set forth in the statement of facts, that when he purchased another automobile to replace the 1930 Pierce-Arrow, his insurance would automatically apply to the replacing automobile 'as of the date of its delivery to him.' The plaintiff, if it had seen fit, might have inserted a provision that the insurance should not attach to the replacing car until the insured had parted with the ownership and possession of the replaced car, but in the absence of any such provision in the policy, these factors of the situation were properly regarded by the trial court as indecisive.

"The finding of the court that the 1935 car 'was purchased for the defendant Lambert's business to replace the 1930 car for the very same use previously made of the 1930 automobile' is fully sustained by the evidence and the conclusion that 'the said policy covered the 1935 Pierce-Arrow sedan at the time of the accident' follows as a logical conclusion." (p. 510.)

The Washington Supreme Court in *National Indemnity Co. v. Giampapa*, 65 Wash. 2d 627, 339 P. 2d 81 (1965), upon the particular facts before it, held there can be no replacement of the "described automobile" with another vehicle so long as the described vehicle is owned by the insured and remains operable.

In relying upon the foregoing cases the appellant argues the facts in the instant case come squarely within the rule—that the 1962 Chevrolet was procured after the issuance of the policy and took the place of the Cadillac, which was at the time of the accident incapable of being operated on the highway. The appellant argues in its brief that the stipulation of facts clearly shows at no time did Kiker own more than two vehicles which could be used on the

highway. This is the entire basis and thrust of the appellant's argument.

We do not think the record presented in the instant case supports the appellant's position.

The whole question is to be resolved by a determination of the intention of Mr. Kiker at the time the 1962 Chevrolet was purchased. In this connection, the transfer of license plates is simply one of the factors which should be considered. The record does not disclose whether the Kikers purchased new license plates at the end of the year for the 1958 Cadillac. It does disclose, however, that Mrs. Kiker after the death of her husband reinsured the 1958 Cadillac when she renewed the policy here in question, and that the Kikers had instructed the appellee's insurance agent less than thirty days after acquiring the 1962 Chevrolet that they did not want the 1962 Chevrolet added to the policy written by the appellee.

Furthermore, the appellant's argument, when subjected to closer scrutiny, does not support the proposition that the transfer of the license plates from the Cadillac to the Chevrolet removed the Cadillac from coverage under the appellee's policy. If, for example, after the purchase of the 1962 Chevrolet and prior to the expiration of the policy on February 4, 1963, Mr. Kiker before his death, or Mrs. Kiker thereafter, had backed the Cadillac over a small child in the driveway, would this court or any other court hold there was no coverage under the appellee's policy? There is no provision in the policy which requires the vehicle to be licensed before the policy provides coverage. The 1958 Cadillac was mechanically operable at all times in question.

Under the policy in question the company contracts that it will insure the automobiles owned by the named insured at the beginning of the policy period. Further, it will insure replacements and additional automobiles under the conditions imposed. Clearly, after Mr. Kiker acquired the 1962 Chevrolet he had three automobiles in operable condition which he could insure for liability purposes in whatever manner he chose. He specifically insured the 1962 Chevrolet with Motors Insurance Corporation at the time of purchase for comprehensive and collision insurance, stating to his insurance agent for the appellee on the 14th day of October, 1962, that the liability insurance on the 1962 Chevrolet was to be written through the S. A. Long Company, his new employer, and that it was part of his compensation.

After Mr. Kiker's death, his wife continued to insure the 1957 Oldsmobile and the 1958 Cadillac with the appellee by renewal of the policy on February 4, 1963. The insurance continued on both of these vehicles until the 1958 Cadillac was sold on February 26, 1963, at which time the policy was canceled on the Cadillac.

We hold as a matter of law that the stipulated facts disclose it was the intention of the Kikers to use the 1962 Chevrolet automobile as an additional automobile, and not as a replacement for the 1958 Cadillac. The appellee's policy, therefore, did not cover the 1962 Chevrolet at the time of the accident.

The judgment of the lower court is affirmed.