INSURANCE MANAGERS, INC., appellee, v. CALVERT FIRE INSURANCE COMPANY, appellant.

No. 52649.

(Reported in 153 N.W.2d 480)

OCTOBER 17, 1967.

John N. Moreland and Wilbur R. Dull, of Dull & Keith, both of Ottumwa, for appellant.

Bannister & Bell, of Ottumwa, for appellee.

SNELL, J.—This is an action at law tried to the court without the aid of a jury and upon stipulated facts except as to the admissibility of certain exhibits offered in evidence.

The trial court's findings of fact as supported by the stipulation are binding on us but the court's conclusions based thereon unless supported are not so binding. We agree with most of the evidentiary matters as found by the trial court but not with the conclusion drawn therefrom.

Was the evidence sufficient to generate a factual issue for determination by the trier of the facts? We think not.

Plaintiff is the assignee of Weston M. Cain who is also the

principal owner of the plaintiff-corporation. Mr. Cain has been continuously employed in the insurance business since 1927.

Defendant, Calvert Fire Insurance Company, a Pennsylvania Corporation, is wholly owned by Commercial Credit Corporation, a Delaware Corporation, a part of what plaintiff's brief describes as the Commercial Credit Empire. The various companies comprising this financial structure are owned by Commercial Credit Company. At all times pertinent hereto defendant insurance company has been authorized to do business in Iowa as a foreign corporation.

From January 1, 1946, to June 30, 1960, Commercial Credit Corporation, a Maryland corporation, was authorized to do business in Iowa as a foreign corporation. It maintained offices in Iowa. All its capital stock was owned by Commercial Credit Corporation of Delaware.

The Maryland corporation on June 30, 1960, surrendered its qualifications to do business in Iowa and on the same date there was incorporated an Iowa corporation under the same name. All of the stock was owned by Commercial Credit Corporation of Delaware. The payrolls of these several corporations, as well as the payroll of the defendant insurance company, were paid by Statistical and Service Corporation, a Maryland corporation also owned by Commercial Credit Company. It is apparent that the several corporations formed a financial structure to finance installment buying and related activities.

The transactions involved herein related to the buying of security instruments on chattel property located in Iowa under installment purchase contracts requiring certain insurance.

The chain of events would begin with a purchase of chattel property in Iowa to be paid for on an installment basis. Commercial Credit Corporation was a source of credit for financing such transactions.

An installment buyer of chattel property in Iowa would execute a retail installment contract or security instrument covering the purchased property, usually an automobile. As a part of his agreement the purchaser agreed to obtain and keep in force fire, theft and collision insurance as requested by

the seller and subject to his approval as to form, amount and insurer. The retail installment contract executed by the buyer included specifications of the types of insurance coverage and benefits, and the amount included in the obligation for insurance premiums. The agreement also authorized the seller as the creditor to purchase any and all such insurance at the purchaser's expense. The purchaser assigned to the seller the proceeds of such insurance to the extent of the unpaid portion of the Total Time Balance. This called for what is referred to as dual interest or double interest insurance.

There was appended to such security document a printed assignment in favor of Commercial Credit Corporation and when so executed by the seller Commercial Credit Corporation became the owner of the security interest in the insured property.

At the time of the execution of the security instruments, Commercial Credit Corporation in or of Iowa, as assignee, made its own investigation of the purchaser relative to employment, income, assets, liquor and draft hazards and other matters relating to the desirability of the purchaser as both a credit and insurance risk. This report was reduced to writing as "Purchaser Investigation Form." The assignee also prepared a written requisition for the insurance required by the transaction. The investigation report and requisition for insurance were prepared in local Commercial Credit Corporation offices in Iowa and were forwarded by mail to the defendant insurance company in Baltimore, Maryland. In the Baltimore office the defendant prepared the insurance policy in accordance with the requisition and forwarded the policy to Weston M. Cain, the real plaintiff herein, at Ottumwa, Iowa, for countersignature. The policy was countersigned by Mr. Cain as agent of the defendant in Iowa and delivered by him to the insured named therein, that is, the purchaser and conditional vendee of the chattel property.

Under the provisions of the transaction the insurance so issued attached and became effective as of the time of the execution of the retail installment contract or security instrument subject only to cancellation by appropriate action.

The premium paid by the installment purchaser for the insurance was included in the amount of his installment payment obligation to the seller and assigned to Commercial Credit Corporation or was to be paid by the purchaser to the seller.

In May 1946 effective as of June 1, 1946, Weston M. Cain, by agreement with Calvert Fire Insurance Company, became the Iowa countersigning agent for the defendant insurance company and was licensed as such under the provisions of chapter 522, Code of Iowa.

Thereafter and until July 1964 Mr. Cain received from the defendant's Baltimore office contracts of insurance and endorsements thereto on risks in Iowa.

Mr. Cain countersigned the instruments and delivered them to the Iowa insureds.

Mr. Cain has been at all times a resident of Iowa and the only licensed countersigning agent for the defendant in Iowa and all policies of insurance written by defendant on Iowa risks were countersigned by Mr. Cain. Except for countersigning policies forwarded to him there is no showing that Mr. Cain solicited, obtained or wrote any insurance for defendant insurance company.

Defendant offered to prove by oral testimony and written exhibits (letters to and from Mr. Cain) an agreement that Mr. Cain for his services as countersigning agent was to be paid 1 percent of the gross net premiums (premiums less return premiums).

Plaintiff objected to this testimony and evidence as violative of a statute primarily in the public interest urging that any such contract was void as against public policy. The court sustained the objection and rejected the evidence.

From June 1, 1946, to July 1964 defendant made monthly reports to Mr. Cain of insurance written and remitted to him compensation on the basis of 1 percent of the insurance premiums. During this period the net premiums totaled $2,201,303. There was paid to and accepted by Mr. Cain 1 percent, i.e., $22,013.03.

Mr. Cain first complained to defendant concerning the amount of the compensation paid him on or about June 2, 1964. He claimed that the commissions earned were $110,065.15, that

he had received $22,013.03 with a balance due in the sum of $88,052.12.

Plaintiff claims a right to recover as claimed pursuant to sections 515.54 and 515.56, Code of Iowa.

Defendant denies that there is anything due plaintiff under the statute, pleads compliance with the statute if applicable, an oral contract for an agreed commission now paid in full. estoppel, acquiescence, laches, settlement and discharge, accord and satisfaction and the statute of limitations.

I. Plaintiff claims a right to recover under the provisions of the statute, section 515.54, Code of Iowa. The burden of proof is on plaintiff to establish by a preponderance of the evidence that the insurance on which plaintiff claims a commission was contracted for or otherwise originated without the state as contemplated by the statute. Our first duty in appellate review is to determine the sufficiency of the evidence to support an affirmative finding. See rule 344 (f) (1), (5) and (6), Rules of Civil Procedure.

In construing applicable statutes we search for the legislative intent as shown by what the legislature said. See rule 344(f)(13).

II. Applicable statutes are found in chapter 515 of our Code.

Section 515.51 provides for officers' signatures on policies.

Section 515.52 requires issuance by or through and countersignature by a licensed agent residing in Iowa.

Section 515.53 disqualifies salaried representatives as countersigning agents.

Section 515.54 provides:

"Agent within state countersigning—commission. In the event policies, contracts of insurance or indorsements thereto on risks located within this state as defined in section 515.52 *are contracted for or otherwise originate without the state,* then in that event, there shall be payable to the countersigning agent, resident of the state, a commission which shall be not less than five percent of the premium charged for such policy, or contract of insurance or indorsement thereto, provided, however, said countersigning commission shall not exceed one half

of the total commission on any line, form, or type of insurance. Nothing herein shall prevent the payment of a larger commission to the resident countersigning agent if agreed to by the interested parties, as hereinafter provided." (Emphasis supplied.)

Section 515.55 authorizes a contract for a higher commission than required by section 515.54.

Section 515.56 gives a countersigning agent a statutory cause of action for commissions due under sections 515.54 and 515.55.

Section 515.57 requires the resident countersigning agent and the insurance company to keep a written record of business "originating without this state but covering property or business transactions within this state, * * *" subject to inspection of the commissioner of insurance. · This is for the purpose of verifying the amount of premium tax.

Sections 515.58, 515.59, 515.60 and 515.61 provide for exemptions, sanctions, penalties and retaliations not involved in the problem before us.

We find no other statute attempting to fix a commission. The commission fixed by statute applies only to insurance policies contracted for or originating outside of Iowa.

■ III. The first problem is basically factual. Does the evidence support a finding that the insurance was contracted for or otherwise originated without the State of Iowa?

It appears without dispute that the risks involved were located in Iowa and the policies were delivered to Iowa insureds.

There is neither showing nor claim that any application for any insurance involved herein was ever signed or applied for outside of Iowa.

There is no showing any insurance was ever paid for outside of Iowa. The place payable of payments due under the installment contract does not appear. It affirmatively appears that the investigation as to the buyers' insurability was made in Iowa. The "Purchaser Investigation Form" was completed and forwarded from Iowa. The requisition for insurance was prepared in an Iowa office and forwarded from Iowa. The

insurance was in force from the time of the execution of the retail installment contract subject only to cancellation by appropriate action. The insurance policies were countersigned and delivered in Iowa.

The only showing of anything ever done outside of Iowa was the filling in of appropriate insurance forms with necessary data in Baltimore and return thereafter to Iowa.

The trial court found from the fact that a risk was covered from the time of the signing of the original security instrument (the time of the sale of the personal property) that the contract for insurance could only arise out of an agreement between Commercial Credit Corporation of Iowa and defendant entered into at some date prior to the assignment of the security agreements by the sellers.

The court also found that because of the common ownership of the Commercial Credit Corporation the coverage arose from a prior agreement between Commercial Credit Corporation (the Iowa corporation) and defendant with the consent of the parent corporation.

From the common ownership of stock in the several corporations comprising the Commercial Credit Empire it is reasonable to assume that there were agreements between them. However, there is nothing in the record relative thereto or as to where or when entered into. Assuming, arguendo, that there was an agreement to provide insurance coverage there was no insurance of any kind until someone in Iowa made a purchase, signed an installment contract and applied for or authorized the purchase of insurance. There is nothing in the record before us to support a finding that the policies of insurance countersigned by Mr. Cain were contracted for or otherwise originated out of the state.

IV. The briefs of the parties state that there are no Iowa cases construing section 515.54 of the Code. We have found none.

What is admittedly dictum in Ragan v. Provident Life & Accident Insurance Co., 209 Iowa 1075, 1082, 229 N.W. 702, gives some indication of what constitutes an Iowa contract. In that case a Tennessee corporation, licensed to do business in Iowa, issued a policy to an Iowa resident employed in Illinois

with premiums to be paid from payroll deductions in Illinois. The opinion says: "Though it is perhaps unnecessary, we may as well say what seems patent to us, that the contract was an Iowa contract, and subject to the provisions of Section 8959" (now section 515.80, Code of 1966).

In 44 C. J. S., Insurance, section 52, page 504 et seq., these statements appear:

■ "As a general rule, a contract of insurance is governed, as to its nature, validity, and construction, by the law of the place where it was made, unless the parties appear to have intended the law of a different place to govern.

"As a general rule, a contract of insurance is governed or controlled, as to its nature, validity, and interpretation or construction, and, likewise, the contract is governed and controlled as to its effect, execution, and enforcement, by the law of the place where it was made or consummated, unless the parties clearly appear to have intended the law of a different place to govern * * *.

"b.   Where Contract Deemed Made

■ "A contract of insurance is deemed to have been made in the state where the last act was done which was necessary to create the contract. Common views are that the contract was made or completed at the place where the application was accepted by the insurer, or where the policy was delivered, or delivered and accepted, or where it was delivered and the first premium, or the premiums generally, were paid.

"What constitutes the place of contracting, in the particular case, is determined by the law of the forum. In legal contemplation a contract of insurance is made in the state where the last act is done that is necessary to create the contract and give it legal effect as such * * *."

In the case before us the first and last acts were in Iowa. Insurance coverage came into force with the signing of the papers in Iowa and each transaction was completed when the policy was countersigned and delivered in Iowa. There was a binding contract from the time of the execution of the security instrument by the purchaser of the chattel property subject only to cancellation by appropriate action. Just what acts

were necessary to cancel does not appear but there is nothing in the record to indicate any right of rejection or retroactive cancellation.

Webster's Third New International Dictionary, unabridged, defines a contract as "an agreement between two or more persons or parties to do or not to do something." Here there was an agreement in Iowa for the issuance of an insurance policy.

"Originate" as a transitive verb is defined as follows: "to cause the beginning of: give rise to: initiate: to start on a course." For legal definitions see also Black's Law Dictionary and Bouvier's Law Dictionary.

Here the beginning, the initiation and start was when someone in Iowa bought a chattel and signed a security instrument calling for insurance.

V. We need not determine the admissibility of the oral testimony and exhibits tendered by defendant. It is obvious that Mr. Cain and defendant for 18 years operated under a policy, agreement or custom that never varied. Neither was inexperienced in the field of insurance. For 18 years they placed their own construction on the nature of the business handled through Mr. Cain. To the extent of their own construction of the amount of commissions due, Mr. Cain and plaintiff have been paid.

There is nothing in the record before us to support a finding that for 18 years the parties have been wrong.

There is nothing in the record to support a finding that the insurance policies involved were contracted for or otherwise originated without the state.

Plaintiff's case fails for lack of evidence to support its claim.

The evidence in the record before us will not support the findings and conclusions of the trial court.

VI. Because of our conclusions in preceding divisions we need not discuss other issues and defenses urged by defendant.

The case is reversed and remanded with instructions to enter judgment for defendant.—Reversed and remanded.

All JUSTICES concur.