EDWARD WOJCIECHOWSKI, PLAINTIFF, v. HARDWARE
MUTUAL CASUALTY COMPANY, THOMAS SCHIAVONE,
GERALD DAVIS AND NELLIE DAVIS, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided March 13, 1969.

*Mr. William A. Garrigle* for plaintiff (*Messrs. Moss and Powell,* attorneys).

*Mr. Michael Patrick King* for defendant Hardware Mutual Casualty Company (*Messrs. Kisselman, Devine, Deighan & Montano,* attorneys).

MARIANO, J. S. C. This is a declaratory judgment action brought by plaintiff for judgment declaring that an automobile which was involved in an accident was covered by an automobile liability policy issued by defendant. The parties have agreed that the issue involved be resolved upon the basis of the oral depositions of plaintiff and the oral depositions and testimony of Richard E. Lukins.

On September 2, 1966 plaintiff was involved in an automobile accident in Winslow Township, Camden County, New Jersey. As a result two suits have been instituted in the Law Division: *Thomas Schiavone v. Gerald Davis and Edward Wojciechowski, Docket L*–4613–66, and *Gerald Davis and Nellie Davis v. Thomas Schiavone and Edward Wojciechowski, Docket L*–26672–66. These two cases were consolidated by order of the court dated July 13, 1967.

After considering the depositions and the oral testimony I find that the following facts have been amply established by competent evidence.

In 1962 or 1963 plaintiff purchased a new 1963 half-ton Datsun pickup truck. Defendant Hardware Mutual Casualty Co. issued its policy No. 29–15708–01 to plaintiff insuring the pickup truck. The policy was renewed on its anniversary date May 1, 1966, for a one-year period to expire May 13, 1967. On June 23, 1966 plaintiff acquired a 1964 Chevrolet Monza, which was the automobile involved in the accident of September 2, 1966.

The Datsun broke down in September 1965; it has not been operational since that time and plaintiff has made no use of it. Plaintiff did not renew the registration of the

Datsun when it expired on March 31, 1966, but did on May 13, 1966 renew the insurance policy covering that car.

Plaintiff did not purchase another motor vehicle sooner than June 23, 1966 because of the lack of funds. The Chevrolet Monza was financed, and collision insurance thereon was secured by the dealer from an insurance company other than defendant.

On or about October 12, 1966 Richard E. Lukins, a representative of defendant, visited plaintiff at his home. Lukins obtained a statement from plaintiff which did not pertain to the manner in which the accident is alleged to have occurred or whether the Datsun was operational from the date of the purchase of the Chevrolet to the date of the accident. During the visit he merely made a cursory observation of the Datsun located on the premises. No inspection of the Datsun or inquiry was made to determine whether it was operable. It is an uncontroverted fact that from before the purchase of the Chevrolet to November 14, 1968 (date of depositions) the Datsun was not operable because the radiator had been removed, the distributor cap was cracked and the brakes were defective. License plates were still on the Datsun on the date of Lukins' visit and they were not removed until two months later. Plaintiff failed to transfer the registration from the Datsun to the Chevrolet because the Datsun was registered as a commercial vehicle. Title to the Datsun remained at all times in plaintiff's name.

It is admitted that plaintiff failed to notify defendant of the purchase of the Chevrolet, and that he did not at any time notify defendant that the Datsun had become inoperable.

Plaintiff's contention is that although the vehicle was a newly acquired automobile, it was a replacement for the automobile described in the policy and therefore, under the terms of the policy, no notice was necessary. Defendant contends that the Chevrolet is a newly acquired automobile to which the policy does not extend coverage in the absence of notice as provided for in the policy.

■ The central question presented to the court for its determination is whether the Chevrolet was a replacement for the insured vehicle within the meaning of the following clause of the policy:

"IV Automobile Defined, Trailers, Private Passenger Automobile, Two or More Automobiles, Including Automatic Insurance.
(a) Automobile. Except with respect to division 2 of coverage C, and except where stated to the contrary, the word 'automobile' means:

\*    \*    \*    \*    \*    \*    \*    \*

(4) Newly Acquired Automobile — an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; *but such notice is not required under coverages A,B and division 1 of coverage C if the newly acquired automobile replaces an owned automobile covered by this policy.*" (Emphasis added).

There being no evidence that the word "replacement" has a meaning peculiar to the insurance field, or that the parties intended any different meaning, the ordinary meaning must govern. "Replace" as defined in 2 *Shorter Oxford English Dictionary* (*3rd ed.* Reprint 1947), 1706 is: "3. \* \* \* b. To provide or produce a substitute or equivalent in place of (a person or thing) \* \* \*." *Nationwide Mutual Ins. Co. v. Mast, 2 Storey* 127, 153 *A. 2d* 893 (*Del. Super. Ct.* 1959), *Continental Casualty Co. v. Employers Mutual Casualty Co.,* 198 *Kan.* 93, 422 *P. 2d* 560 (*Sup. Ct.* 1967).

*Webster's New International Dictionary* (*2d ed.,* defines "replacement" as follows:

" 'Replace' means 'To take the place of; to serve as a substitute for, or successor of; supplant; \* \* \*. To fill the place of; to supply an equivalent for; \* \* \*.

" 'Replacement' is defined as an 'Act of replacing, or state of being replaced. \* \* \*. A new fixed asset, or portion of an asset, which takes the place of a discarded asset, or portion of an asset."

*Ray v. State Farm Mutual Automobile Ins. Co.,* 152 *So. 2d* 566 (*La. Ct. App.* 1963).

A general case of replacement occurs when an old vehicle is disposed of and a new vehicle of equivalent use is substituted. A problem arises when the old vehicle is temporarily retained after the new vehicle has been procured.

Retention of possession of the vehicle described in the policy does not, in itself, prevent the extension of coverage to the newly acquired automobile as a replacement within the meaning of the policy provisions. *Nationwide Mutual Ins. Co. v. Mast, supra.*

In *Patrick v. State Farm Mutual Automobile Insurance Co.,* 90 *N. J. Super.* 442 (*Law Div.* 1966), it was held that the insured at no time within the period covered by the automobile liability policy owned more than one operable automobile, each vehicle was a replacement for its predecessor, so that the pick-up truck involved in the accident was not a newly acquired automobile within the exclusions of the policy but was a replacement vehicle covered by the policy. *Main Investment Co. v. U. S. Fidelity & Guaranty Co.,* 29 *N. J. Super.* 221 (*Ch. Div.* 1953), is factually inapplicable to the case at hand. Because of the dearth of case law in our State concerning the issue, I deem it advisable to resort to reported decisions of other jurisdictions.

The court in *Merchants Mutual Casualty Co. v. Lambert,* 90 *N. H.* 507, 11 *A. 2d* 361 (*Sup. Ct.* 1940), 127 *A. L. R.* 483, 34 *A. L. R. 2d* 945, found the following facts: the old car covered by the policy remained in the insured's garage, with license plates attached, after the purchase of the new car; it had not been used by the insured for several months prior thereto because it was worn out, out of repair, and not fit to be driven upon the highway. It was upon these facts that the court held that a transfer of insurance took place under the replacement clause despite the retention of ownership and possession of the old automobile by the insured.

5A *Am. Jur., Automobile Insurance*, § 85, *p.* 83, speaks as follows on the point:

"One of the primary questions to be determined in respect to a 'replacement' provision in an 'automatic insurance' clause is, of course, whether the newly acquired automobile 'replaces' an automobile described in the policy. In this respect, the fact that the car described in the policy was retained by the insured and was in a legally usable condition has been held not to preclude transfer of coverage to the newly acquired car, where such car was actually purchased to replace the first car for the same use."

From a reading of this statement it is clear that retention of possession of a *legally usable* automobile does not preclude a transfer of coverage.

The instant case presents a stronger argument in favor of replacement because, unlike the automobile involved in the *Merchants* case, the Datsun was not legally usable in that plaintiff had failed to renew the registration.

In *Maryland Indem. & Fire Ins. Exchange v. Steers*, 221 *Md.* 380, 157 *A.* 2d 803 (*Ct. of App.* 1960), not only was a similar policy provision involved, but the factual situation was substantially the same as the factual situation in the case under consideration. A 1946 Oldsmobile was named in the policy; the accident occurred on November 1, 1957; the Oldsmobile became inoperable prior to April 1956; its registration was renewed after April 1956. On May 15, 1956 Steers purchased a Dodge automobile. The original policy was renewed in December 1956, repeating the designation of the Oldsmobile as being the insured vehicle. In March 1957 Steers renewed the registration on the Dodge but did not renew the registration on the Oldsmobile, so that after the registration of April 1956 had expired it was not only physically inoperable but also legally inoperable. On May 20, 1957 Steers sold the Dodge automobile, bought a Ford and caused the registration to be transferred thereto. The Ford was involved in the accident. The court found that the Ford was a replacement vehicle because the Olds-

mobile was physically and legally inoperable at the time of the acquisition of the Ford car.

Based on the factual situation as found and the law applicable thereto, I conclude that the vehicle involved in the accident was a replacement within the meaning of the policy provision. Consequently notice of such replacement within 30 days was not required and coverage was automatic.