Robert BJORK, Marily Bjork, in her own Right, and as Mother and Next Friend for Pamela Bjork, a Minor and Russell Bjork, a Minor, Charles L. Krueger and Beverly Krueger, Appellees,

v.

DAIRYLAND INSURANCE COMPANY, Appellant.

No. 53767.

Supreme Court of Iowa.

Feb. 10, 1970.

James, Greer, Nelson & Bertell, Spencer, for appellant.

Loughlin Law Firm, Cherokee, for appellees.

MOORE, Chief Justice.

This is a declaratory judgment action to determine whether an accident involved automobile was a replacement vehicle for that described in the liability insurance policy issued by defendant company. The trial court so found and entered judgment against defendant for the amount of damages resulting from the accident which had been adjudicated against the policy holder in a prior lawsuit. Defendant has appealed. We reverse.

On July 3, 1967, plaintiff, Charles L. Krueger, age 29, and a resident of Fairmont, Minnesota, while driving his 1960 Oldsmobile in Arnolds Park, Iowa, "rear ended" the Robert Bjork automobile causing injuries and damages to members of the Bjork family, named as plaintiffs herein.

Thereafter the Bjorks instituted action against Krueger for their alleged damages and after defendant company refused to defend that action on the ground of no cover-

age, Krueger defaulted and the Bjorks obtained a $4250 judgment against him.

Bjorks then filed this declaratory judgment, in which Krueger and his wife later joined, to establish liability against defendant company under the terms of an automobile liability policy issued by it to Krueger. Defendant denied coverage of the Krueger car involved in the accident.

Defendant first issued its liability policy, number 21–072722 to Krueger on January 29, 1965, covering a 1957 Pontiac automobile. Coverage was subsequently transferred to other specified automobiles as follows: 8–31–65, 1957 Mercury 2 door hardtop; 1–10–66, 1960 Ford 2 door hardtop; 5–28–66, 1959 Ford convertible; 11–10–66, 1958 Oldsmobile 2 door holiday; 6–7–67, 1959 Oldsmobile 4 door sedan. On July 3, 1967, the accident date, the insurance policy described the 1959 Oldsmobile four door sedan as the insured vehicle.

Section IV of the insurance policy specifically provided that automobile means the motor vehicle described in the policy. The insurance contract also contained this pertinent language: "(1) Described Automobile —the motor vehicle or trailer described in this policy, or if none is described, any private passenger automobile owned on the effective date of this policy by the named insured or by his spouse if a resident of the same household. * * *

"(4) Newly Acquired Automobile—a private passenger automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household if (i) it replaced an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and his spouse on the date of its delivery. * * *."

The facts, other than the discovery deposition of Krueger which plaintiffs introduced, were stipulated in the trial court.

The stipulation identified the policy and made it part of the record, stated that at all material times Krueger was a resident of Minnesota and the insurance policy was purchased from defendant's agent in Fairmont and issued in Minnesota.

Krueger testified following completion of the tenth grade in high school he worked a year, then served in the military until 1959 and on his return to the Fairmont area worked four or five years for gasoline stations and thereafter on construction crews. In the army he was sent to mechanic's school and considered himself a mechanic. He owned a $1000 set of tools and made a habit of buying, repairing and then selling automobiles to other persons.

On July 3, 1967, the accident date, in addition to the 1959 Oldsmobile described in the policy Krueger owned a 1940 Buick in storage, a 1959 Ford, a 1967 Pontiac, referred to as his wife's car, insured with another company, and the accident involved 1960 Oldsmobile which he had purchased June 10, 1967.

In June 1967 Krueger was employed on a construction crew near the town of Milford, Iowa but was residing in Fairmont. From the time he acquired the 1959 Oldsmobile in May, 1967 he drove it back and forth from his home to his job until a day or two prior to June 10. Krueger testified it was in pretty bad mechanical condition, it hammered and clattered, was getting worse, needed repair and he was afraid he "wasn't going to make it to work".

A day or two before June 10 Krueger drove it from his job to his father's home in Fairmont and left it there. He intended to have his father, an experienced mechanic, repair it or do the job himself at some future time. He stated he could have done the job in possibly two days. He never drove it again. It was repaired and sold in September or October 1967. He testified he bought the 1960 Oldsmobile as a replacement to drive to and from his work.

On July 8, five days after the accident, Krueger gave defendant company notice of the acquisition of the 1960 Oldsmobile and requested a transfer of coverage from the 1959 to the 1960 Oldsmobile. The company did so.

On July 17, 1967 Krueger gave defendant company a statement which included: " * * * About July 1, 1967, I bought a 1960 Oldsmobile Convertible. I have a 1959 Oldsmobile four door. The valve lifters were bad in the 1959 Oldsmobile. Rather than fix the 1959, I bought the 1960 Oldsmobile. The 1959 Oldsmobile still runs but is noisy. The 1959 Oldsmobile is in Fairmont. The only time the 1959 is used is my wife drives it to the grocery store. I intend to rebuild the 1959 Oldsmobile this winter and then sell it * * *."

Krueger testified he made the statement but "that he did not know if his wife was driving the 1959 Olds to drive to the store in July of 1967."

The primary and decisive question here is whether plaintiffs have established the 1960 Oldsmobile was a replacement vehicle within the meaning of the insurance policy. A like question has not been heretofore submitted to this court. As we point out infra it has been considered in many other jurisdictions.

I. Plaintiffs-appellees argue this case is in law rather than equity as asserted by defendant-appellant. The pleadings are not designated as in law or in equity. The trial however was conducted as in equity. The trial court made no rulings on objections during trial. The trial court's conclusions of law include: "Even although the pleadings of the parties do not designate whether this case is triable in equity or at law, it was tried as an equitable action."

■ The legal or equitable nature of a declaratory-judgment proceeding is to be determined by the pleadings, the relief sought and the nature of each case. As it was tried below, we consider it on appeal. Henderson v. Hawkeye-Security Ins. Co., 252 Iowa 97, 100, 106 N.W.2d 86, 88; Wetzstein v. Dehrkoop, 241 Iowa 1237, 1246, 44 N.W.2d 695, 700, and citation. It is clear the trial court tried this case in equity. Our review therefore is de novo. Rule 334, Rules of Civil Procedure.

■ II. As a general rule, a contract of insurance is governed and controlled, as to its nature, validity, construction, effect, execution and enforcement, by the law of the place where it was made or consummated. Insurance Managers, Inc. v. Calvert Fire Ins. Co., Iowa, 153 N.W.2d 480, 484; 44 C.J.S. Insurance § 52. The insurance contract here involved having been made in Minnesota the holdings in that jurisdiction are of particular value.

■ III. In Quaderer v. Integrity Mutual Insurance Company, 263 Minn. 383, 116 N.W.2d 605, the court after reviewing the applicable rules of construction held the question of whether the accident involved Hudson automobile was a replacement of the described insured Oldsmobile was a fact question. The court held the Hudson did not in fact "replace" the Oldsmobile within the terms of the policy which were very similar to those in the case at bar.

In a more recent case, Dike v. American Family Mutual Insurance Co., Minn., 170 N.W.2d 563, 566, the court quotes this from its Quaderer case: " 'The apparent purpose sought to be achieved by defendant in the sale of this policy was to insure plaintiff against all risks arising out of the operation of the automobile described in the policy and, in addition, any automobile he *acquired to replace it* * * *.' (Italics supplied.)"

In Dike the court held the policy wording of "newly acquired" and "replace" were not ambiguous and under the facts the accident involved vehicle was not a replacement for the vehicle described in the policy.

In the recently published dictionary, The American Heritage Dictionary, "replace" is defined as "To take or fill the place of; supplant or supersede. To be or provide a substitute for."

In Continental Casualty Co. v. Employers Mut. Cas. Co., 198 Kan. 93, 422 P.2d 560, the court considered almost identical provisions of an automobile liability as those now before us and held under the facts, as a matter of law, a 1962 Chevrolet accident involved automobile was not a replacement for the policy described 1958 Cadillac. At page 562, 422 P.2d, the court says: "In the absence of evidence that the word 'replacement' had a meaning peculiar to the insurance field or that the parties intended any different meaning in the automobile liability policy, the usual and ordinary meaning of the term, that is, to provide or produce a substitute or equivalent in place of a person or thing, would govern. (Nationwide Mut. Ins. Co. v. Mast et al., 2 Storey 127, 52 Del. 127, 153 A.2d 893.)" No such contentions are made by the plaintiffs in the case at bar.

 In Iowa Etc. Ins. Co. v. Fidelity & Cas. Co., 256 Iowa 723, 725, 128 N.W.2d 891, 893, we say: "In construing any contract it is our duty to ascertain and give effect to the intention of the parties. An insurance policy is a contract. We should not so construe it as to give a meaning that either extends or restricts the coverage beyond that actually provided. The contract should be construed as a whole, and the clear and unambiguous language must be given its plain meaning. These rules are so well established in all jurisdictions that they need no citation of authority."

It is clear the parties here intended coverage of only one vehicle at a time. Krueger intended to keep the described car for an indefinite time in the future. Coverage of the 1959 Oldsmobile which was operable and available for the use of Mrs. Krueger and coverage of the 1960 Oldsmobile being used by Mr. Krueger would be contrary to one car coverage and the unambiguous language of the policy.

In Nationwide Insurance Company v. Ervin, 87 Ill.App.2d 432, 231 N.E.2d 112, the transmission of the policy described Chevrolet "went out" and the insured bought a 1958 Cadillac which while in use was involved in an accident. Based on the facts coverage of the Cadillac was denied on the ground it did not replace the Chevrolet. The court at page 115, 231 N.E. 2d, said: "Consequently, a replacement could only exist under the provisions of this contract where the insurer had no further obligations in regard to the named automobile."

 We hold that under the particular facts in the case at bar the 1960 Oldsmobile was not a replacement of the policy described 1959 Oldsmobile within the meaning of the automobile liability insurance policy involved. This conclusion is strongly supported by the holdings in these additional authorities. Luckett v. Cowser, 39 Wis.2d 224, 159 N.W.2d 94; Yenowine v. State Farm Mutual Automobile Ins. Co., 6 Cir., 342 F.2d 957; McKinney v. Calvert Fire Insurance Co., Tex.Civ.App., 274 S.W. 2d 891; Mitcham v. Travelers Indemnity Co., 4 Cir., 127 F.2d 27. See also 7 Am.Jur. 2d., Automobile Insurance, section 101.

It is our conclusion the judgment of the trial court should be, and it is, reversed and remanded for entry of judgment in conformity with this opinion.

Reversed and remanded.

All Justices concur.