**Beverly ROEPKE, widow of Lawrence B. Roepke, deceased employee, Respondent,**

**v.**

**RICE COUNTY 66 OIL et al., Relators.**

**No. 47696.**

Supreme Court of Minnesota.

Nov. 10, 1977.

Cousineau, McGuire, Shaughnessy & Anderson, and Robert J. McGuire, Minneapolis, for relators.

Cook & Dokken, Stephen L. Dokken, Faribault, for respondent.

Heard before TODD, SCOTT, and WAHL, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

Certiorari appeal to review a decision of the Worker's Compensation Court of Appeals denying a request for an autopsy on the body of a deceased employee. We affirm.

Lawrence B. Roepke was an employee of relator Rice County 66 Oil. On October 4, 1976, while he was driving his employer's van in the course of the employer's business in a southerly direction on Rice County Highway No. 3, his vehicle swerved suddenly into the oncoming lane of traffic and collided with a northbound semi-tractor trailer unit. The driver of the tractor-trail-

er stated that he did not see anyone behind the wheel of the van before the collision. The van was completely mangled, and Mr. Roepke was found dead immediately after the accident in a grassy area to the west of the highway.

Due to the statement of the driver of the other vehicle, relators claimed that the deceased may not have died from the collision but instead "perhaps the deceased suffered a heart attack, or seizure, or some type of disease or infectious process, which can only be determined by an autopsy," but made no such showing.

Dr. Asa Graham, the Rice County Medical Examiner, examined the body shortly after the accident at the Rice County morgue. He found severe multiple injuries, including multiple fractures of the skull, and a 3-inch wide laceration of the neck nearly down to the spine involving all the deep structures on the left side of the neck and some of those on the right. The chest had multiple rib fractures, and there were multiple fractures of the legs and arms. After talking to the sheriff and his deputy, Dr. Graham concluded that "the death was caused by his multiple injuries and that an autopsy was not necessary." A blood test indicated a negative alcohol reading. Dr. Graham further stated that an autopsy would be of no value in showing or proving whether Roepke was dead or alive at the time of the accident.[1]

Dr. Dean T. Clark, a pathologist who performs autopsies for Rice County under the direction of Dr. Graham, stated: "I feel that injuries in such a case would almost certainly cause death." Upon questioning about possible other causes such as a heart attack, he stated: " * * * [A] heart attack can sometimes be anatomically shown, but a heart attack is not death."

Relators, based upon the fact that the Roepke vehicle moved from its lane of travel across the center of the road suddenly and that no driver was seen, claim that this "bizarre" incident entitles them to an au-

---

1. Minn.St. 390.32, subd. 2 provides: "The medical examiner may conduct an autopsy in the case of any human death of any type referred to in subdivision 1, clauses (1) or (2), when in the judgment of the medical examiner the public interest requires an autopsy."

topsy under Minn.St. 176.155, subd. 4, which provides in part:

"In all death claims where the cause of death is obscure or disputed any interested party may request an autopsy and, if denied, the compensation judge, or worker's compensation court of appeals upon appeal, upon petition and proper showing, shall order an autopsy."

The relators produced Dr. Norman Horns, a pathologist, who testified that in his opinion an autopsy might be beneficial in showing whether death was caused by the injuries received in the accident or if there was some contributing natural disease that might have caused the occurrence of the accident in the first instance. He admitted, however, that "[w]e could not say with 100 percent certainty in an autopsy that the man died prior to the accident."

The majority opinion of the Worker's Compensation Court of Appeals affirmed the order of the compensation judge denying an autopsy. In their memorandum, the majority stated:

"In reading Minn.St. 176.155, Subd. 4, one must note the order of the words of the first sentence. The sentence provides two requirements:

1) the cause of death must be obscure or disputed;

2) there must be a 'petition and proper showing.'"

Further they stated:

" * * * To be a 'proper showing' there must be established:

1) a reasonable probability that an autopsy will establish what is sought;

2) that the trier of fact will be reasonably aided by the results of the autopsy and should have the benefit of such results to render a proper decision.

"There is no such demonstration here. The evidence is that the employee was known to have been alive shortly before the accident. The employee's body was badly mangled and suffered injuries that in and of themselves would be a likely cause of death. * * * The overwhelming weight of the medical evidence is that the autopsy cannot show that the

employee was dead just prior to the moment of the collision."

The relators state the issue, therefore, very concisely in their brief as follows:

"Under the facts of this case, has a proper showing been made so as to entitle the employer and insurer to an autopsy of a deceased employee pursuant to M.S.A. 176.155, Subd. 4?"

With equal brevity, we must agree with the Worker's Compensation Court of Appeals. From the record submitted, showing the badly mangled truck and body of the deceased, we would have to agree that logic dictates that the triers of fact will not be aided in any way by the results of an autopsy in rendering the ultimate opinion from this factual setting. It may be interesting and possibly even useful for other purposes to know what made this 56-year-old man with no apparent prior serious medical difficulties swerve into the other vehicle, but an autopsy would be of no value in proving whether or not the employee was alive or dead at the moment of impact. The "overwhelming weight of the medical evidence" was found to establish that an autopsy would not determine this. Under the circumstances of this case, experience would dictate that an autopsy would not affect the final decision under the worker's compensation law of this state.

The findings are amply supported by the record, and this court will not disturb such a finding "unless consideration of the evidence and the inferences permissible therefrom clearly requires reasonable minds to adopt a conclusion contrary to the one at which the [Compensation Court] arrived." *Saholt v. Northwest Airlines, Inc.*, 290 Minn. 393, 399, 188 N.W.2d 772, 776 (1971). Conflicts in medical opinions are to be resolved by the triers of fact and not by this court on review.

" * * * In general, requests for autopsies are granted only if there is a strong showing by the party making the request that an autopsy will be likely to establish the disputed fact and that the truth cannot be obtained through other

evidence." *Delaware Machinery & Tool Co. v. Yates,* 351 N.E.2d 67, 73 (Ct.App. Ind.1976).

In affirming, we adhere to the findings of the Worker's Compensation Court of Appeals in this case, that under the statute not only must the death be obscure or disputed, but that there must also be a "proper showing" that an autopsy would reasonably aid the triers of fact in arriving at the ultimate decision. There was no such showing here.

Respondent is awarded $400 attorneys fees.

Affirmed and remanded for further proceedings.

SHERAN, C. J., took no part in the consideration or decision of this case.