LIFE INVESTORS INSURANCE COMPANY OF AMERICA, an Iowa Corporation, and Union Life Insurance Company, an Ohio Corporation, Appellants,

v.

Dorothy M. HELINE, in her individual capacity and as Administrator of the Estate of John Peter Heline, Deceased, Appellee.

No. 62443.

Supreme Court of Iowa.

Nov. 14, 1979.

Timothy J. Walker and Kermit S. Sutton of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellant Life Investors Ins. Co. of America.

Stewart, Hatfield, Klass & Whicher, Sioux City, for appellant Union Life Ins. Co.

John P. Dollar of Seery, Dollar & Griffin, Des Moines, for appellee.

LARSON, Justice.

Plaintiff life insurance companies commenced an action for disinterment for an autopsy to determine the cause of death of an insured. The trial court, concluding the request was not made within a reasonable time, refused to order disinterment. On appeal, we reverse and remand for entry of a disinterment order.

John Heline, husband of the defendant Dorothy M. Heline, died on July 1, 1974. The death certificate stated his death was by natural causes—cardiac arrythmia due to myocardial infarction and "hypertension-obesity." The body was embalmed and, on July 3, 1974, was buried without an autopsy.

At the time of his death, John Heline was insured by plaintiffs under policies providing for double-indemnity benefits for accidental death. Claims for the base amount of the policies were paid soon after Heline's death; however, claims for double-indemnity benefits filed in December, 1974, and January, 1975, were denied by both companies in January, 1975. The basis for denial was that Heline's death was not the result of an accident, but of natural causes. On May 26, 1976, actions for payment of double indemnity benefits were commenced, and the insurance companies' action for disinterment was commenced on June 2, 1977. Defendant answered, alleging the plaintiffs' unreasonable delay precluded their right to seek an order for disinterment. Trial on the disinterment petition was held on June 16, 1978.

At the trial, the parties relied upon testimony of pathologists on the issue of the probative value of an autopsy, in view of the length of time which had passed after burial. While neither of the pathologists testified with certainty that an autopsy would establish the cause of death, even defendant's pathology witness stated that some useful evidence would "likely" be revealed at that time, depending largely on four factors: ground temperature, integrity of the casket, the embalming process, and the nature of the illness, i. e., whether extended or of short duration. Plaintiffs' pathologist agreed that these factors were critical in determining success of a delayed autopsy and concluded that, assuming the existence of such favorable conditions, "[t]here is no guarantee that one could find everything, but I believe information, both positive and negative, could be elicited by such an examination." Based upon the testimony of the embalmer as to the manner of his embalming of the body, and the types of casket and vault used, the chances were "quite good" that this body was well preserved, according to him.

Our disinterment statute, section 144.34, The Code, contains no time limits. It provides, in relevant part:

> Disinterment of a dead body or fetus shall be allowed for the purpose of autopsy or reburial only, and then only if accomplished by a licensed funeral director or embalmer. A permit for such disinterment and, thereafter reinterment shall be issued by the state registrar according to rules adopted pursuant to chapter 17A or when ordered by the district court of the

county in which such body is buried. . . . Disinterment for the purpose of autopsy or reburial by court order shall be allowed only when reasonable cause is shown that someone is criminally or civilly responsible for such death, after hearing, upon reasonable notice prescribed by the court to the surviving spouse or in his or her absence, death or incapacity, the next of kin. Due consideration shall be given to the public health, the dead, and the feelings of relatives.

The basic requirement for disinterment is "a strong showing that the facts sought will be established by an examination or autopsy." 25A C.J.S. *Dead Bodies* § 4(3), at 506 (1966). *Accord*, 22 Am.Jur.2d *Dead Bodies* § 20, at 568–69 (1965). The principle was thus stated in *In re Disinterment of Tow*, 243 Iowa 695, 700, 53 N.W.2d 283, 286 (1952): "It is sufficient to show there is reasonable likelihood that an autopsy would either confirm or negative the claim of the insurer-applicant." Obviously, passage of time would be an important consideration in making such a showing, and could result in a loss of the right to request disinterment—not because of the delay per se but because of the attendant reduction in probative value of the autopsy results. In concluding the delay here was fatal to the request for disinterment, the trial court relied upon this language in *In re Disinterment of Jarvis*, 244 Iowa 1025, 1031, 58 N.W.2d 24, 27 (1953):

> Conceding any right to a court order for disinterment may be lost by unreasonable delay in applying for it, . . . .

The trial court considered *Jarvis*, by implication, made it "clear that a right to disinterment may be lost by unreasonable delay," despite its recognition that "[o]ur statutes fix no time limit for filing such an application." *Ibid.*

As *Jarvis* pointed out, time limitation for requesting disinterment is a policy question for the legislature, not the courts. No such policy having been expressed as a separate condition to disinterment, we should not supply it by construction.

As applied to this case, delay alone was not considered by the pathologists to be determinative on the value of an autopsy. Rather, the circumstances surrounding preparation and burial were the primary considerations, and the defendant's own expert testified it was "likely" that some information on cause of death would be obtained. Based upon the evidence, the trial court concluded there was in fact "a reasonable likelihood that an autopsy now would either confirm or negative the plaintiffs' claim as to the cause of death."

Despite the court's conclusion that the requisite showing of likely probative value had been established, it still refused to order disinterment on the ground that "the court is giving consideration to the dead in its finding of an unreasonable delay in seeking disinterment and autopsy." The trial court therefore gave to this statutory "consideration" the status of a condition precedent to disinterment, raising the first issue for disposition.

I. The probative value of an autopsy having been established, what further showing must be made by a petitioner for disinterment? Are the statutory "considerations" in fact conditions precedent to disinterment which must be satisfied before it may be ordered?

Iowa recognized the right of disinterment under some circumstances, even before the enactment of our disinterment statute in 1924. *See, e. g., Thompson v. Deeds*, 93 Iowa 228, 61 N.W. 842 (1895); *Jarvis*, 244 Iowa at 1034–35, 58 N.W.2d at 29 (dictum). *Thompson* said disinterment would be ordered only "under circumstances of extreme exigency," because "[a] proper appreciation of the duty we owe to the dead, and a due regard for the feelings of their friends who survive, and the promotion of the public health and welfare all require" such caution. 93 Iowa at 230, 61 N.W. at 842. Thus, at common law the courts had power to order disinterment, but these cautionary words placed restrictions on the exercise of that power. The cautionary language of *Thompson* is strikingly similar to our present statutory mandate that

"[d]ue consideration shall be given to the public health, the dead, and the feelings of relatives." § 144.34, The Code. These considerations are neither bases for nor parameters of the court's authority to order disinterment. Rather they are caveats, in effect, admonishing courts that, when ruling in disinterment cases, they must not disregard certain special considerations attending such unique and sensitive subject matters. The general rule, stated in 25A C.J.S. *Dead Bodies* § 4(3), at 506 (1966), supports this view. It states:

> Disinterment for the purpose of examination or autopsy should not be ordered unless it is clearly established that good cause and urgent necessity for such action exist. An order should not be made except on a strong showing that the facts sought will be established by an examination or autopsy. In the search for the truth, the problems of religion, the wishes of decedent, the sensitivities of loved ones and friends, or even the elements of public health and welfare, *should not be disregarded*. (Emphasis added.)

*Accord,* 22 Am.Jur.2d *Dead Bodies* § 21, at 569 (1965).

■ As all three listed criteria for "consideration" militate against disinterment, the wording of the statute clearly implies that there is an unexpressed consideration against which those criteria must be balanced. That implied consideration is the underlying authority of the court, even predating the statute, to order disinterment, and its broad power to order production of relevant evidence. The underpinning of that power in exhumation cases is the need for, and the probative value of, the exhumed evidence. *See Jarvis,* 244 Iowa at 1034–35, 58 N.W.2d at 29; 8 J. Wigmore, *Evidence in Trials at Common Law* § 2221, at 197–98 (McNaughton rev. ed. 1961); 25A C.J.S., *supra,* at 505–506; 22 Am.Jur.2d, *supra,* § 20, at 568–69. Therefore, even if matters of public health, the dead, and feelings of relatives are established as counter-

vailing considerations in a particular case, disinterment may still be allowed if the probative value of the autopsy evidence, and the need for it, weigh more heavily in the balance. This is clearly recognized in *Jarvis,* which stated "the right to have the body remain undisturbed . . . is not absolute, and must yield where . . . the demands of justice require such subordination." 244 Iowa at 1035, 58 N.W.2d at 29 (quoting 25 C.J.S. *Dead Bodies* § 4(b), at 1023).[1] *See also* Wigmore, *supra,* at 197–98, *quoted in Jarvis,* 244 Iowa at 1035, 58 N.W.2d at 29,[2] where the author states:

> The *exhumation* or the *autopsy of a corpse,* when useful to ascertain facts in litigation, should of course be performed. Reverence for the memory of those who have departed does not require us to abdicate the high duty of doing justice to the living . . . .. (Emphasis in original.)

■ When applied to the facts of this case, the testimony clearly established a need for an autopsy, because very little evidence of a direct nature was available to determine the exact cause of death. The reasonable likelihood that an autopsy would provide probative evidence on the issue, despite a relatively long period of burial, was also established in the record. Weighed against the power of the court to order production of this evidence, what interests must be considered? No claim was made that the disinterment would endanger public health, nor that it offended the dead. According to her answer, the widow opposed it, as apparently did the parents of the deceased, although there was no evidence presented as to how the proposed disinterment offended the "feelings of relatives" under the statute. Even if evidence had been produced to establish mere reluctance on the part of the family, it is questionable whether this would be sufficient. A relative's objection that "I just don't like the idea" of an autopsy was given little

---

1. The same general proposition is stated in the newer edition of C.J.S. *See* 25A C.J.S., *supra,* § 4(1), at 496–97.

2. The quote was actually from an earlier edition of the treatise, but the language was not altered by the McNaughton revision.

weight in *Jarvis*. 244 Iowa at 1031, 58 N.W.2d at 27.

When weighed against the need for the disinterment, the countervailing considerations here were insufficient to require its denial. The strong interest of the courts in obtaining evidence under such circumstances, and the view that the common-law authority to order disinterment was enhanced by our statute are apparent in this language from *Tow*, where it described the trial court's order for disinterment in this language:

> The result reached [ordering disinterment] has the advantage that its effect is to broaden rather than narrow the search for truth as to the cause of death—a tendency to reveal rather than conceal possible facts bearing on the respective rights of the parties.

243 Iowa at 700, 53 N.W.2d at 286.

■ II. This action was treated as one in equity, from the filing of the petition through the court's ruling, without objection. We therefore treat it as a matter of equity on appeal. *Brammer v. Allied Mutual Insurance Co.*, 182 N.W.2d 169, 172 (Iowa 1970); *Bjork v. Dairyland Insurance Co.*, 174 N.W.2d 379, 382 (Iowa 1970). Our review is therefore de novo. Iowa R.App.P. 4. When the record is examined de novo in light of the legal principles discussed above, we conclude there was sufficient evidence to create a prima facie case for disinterment, and the objections raised were insufficient to defeat it. The state registrar should therefore be ordered to issue the permit for disinterment as provided by section 144.34, The Code.

III. The scope of our review in disinterment cases should be discussed, although it is not necessary for disposition of this case, because of the manner of its presentation in the trial court, as discussed in Division II. We should address this matter because of language in *Tow* stating that review in a disinterment case is to be on error, not de novo. Section 144.34, The Code, does not state whether such actions are to be in equity or at law. Section 611.6, The Code, provides that unless otherwise provided, actions shall be by ordinary proceedings. Section 611.4, however, preserves equitable jurisdiction for all actions if they were in equity at common law. It provides:

> The plaintiff may prosecute his action by equitable proceedings in all cases where courts of equity, before the adoption of this Code, had jurisdiction, and *must so proceed in all cases where such jurisdiction was exclusive.* (Emphasis added.)

Matters of interment and disinterment, because of their spiritual overtones, have historically been considered to be regulated by the canons of the church and therefore were originally under the jurisdiction of the ecclesiastical courts. Upon the demise of the ecclesiastical courts, these matters were reposed in courts of equity. *King v. Frame*, 204 Iowa 1074, 1079, 216 N.W. 630, 632 (1927). The rationale is thus stated:

> While usually it is simply stated (without explaining why) that in this country courts of equity have succeeded to the jurisdiction of the ecclesiastical courts over interred bodies, the true reason seems to be that equitable procedures are better adapted by far than are those of the law for weighing the delicate considerations necessary to fair resolution of controversies between proponents and opponents of disinterment and removal of remains. But whatever the reason, exhumation and removal of remains is in the United States a well-recognized province of equity.

Annot., 21 A.L.R.2d 472, 483 (1952). This view is also reflected in this language:

> In actions involving dead bodies the usual rules governing civil actions have been applied. Since we have no ecclesiastical courts, and since the charge of a dead body is regarded as a trust, controversies relative to the interment or disinterment of dead bodies are within the jurisdiction of courts of equity.

25A C.J.S., *supra*, § 9, at 519. The ability of equity to anticipate and avoid harm, while law can only provide redress for it, is also stated to be an important consideration. 21 A.L.R.2d, *supra*, at 483.

■ Disinterment matters have thus been within the exclusive jurisdiction of courts of equity. Accordingly, they were considered to be equitable actions in Iowa prior to enactment of the disinterment statute. *King*, 204 Iowa at 1079, 216 N.W. at 632. *Tow*, however, refused to apply the principle of de novo review applicable in equity cases, stating:

> This is not an appeal involving a review de novo. It is rather a review somewhat in the nature of certiorari. It questions the court's power to act . . . ..

243 Iowa at 698, 53 N.W.2d at 285. No authority is cited by *Tow* to support that position. Our continued adherence to *Tow* on this issue would disregard our prior rule recognized in *King v. Frame* and the overwhelming weight of authority holding disinterment cases to be triable exclusively in equity. Section 611.3 requires that matters exclusively in equity at common law should be retained in equity. We therefore overrule *Tow* insofar as it states the scope of review in disinterment actions to be on error and adhere to our initial rule that they are in equity, reviewable de novo.

This case is reversed and remanded for entry of an order directing the state registrar to issue a permit for disinterment as provided by section 144.34, The Code.

REVERSED AND REMANDED.

All Justices concur except HARRIS, McCORMICK, and McGIVERIN, JJ., who dissent.

HARRIS, Justice (dissenting in part).

I respectfully dissent in part because I disagree with the majority's interpretation of Code section 144.34 and of the cases in which we have considered it. I also dissent from the majority's holding that our review in disinterment cases should be de novo.

I. The majority believes the considerations mentioned in section 144.34 are mere "caveats" and are not intended to define the court's authority in disinterment matters. As authority for downgrading the statutory considerations the majority looks to the common law, as it existed in Iowa

before the statute and as it now exists elsewhere. But the prior existence in Iowa of a common law right to disinter sheds no light on legislative intent. There is nothing to indicate that our statute is a codification of our prior cases. Neither is there any reason to suppose our statute was adopted merely to codify the common law as it exists elsewhere.

From a reading of section 144.34 I believe the legislature did indeed establish three considerations which were intended to govern the court's consideration of disinterment applications. The statute seems quite explicit: "Due consideration shall be given to [1] the public health, [2] the dead, and [3] the feelings of relatives." These considerations are reasonable and helpful, given the difficult task facing a court in ruling on disinterment applications.

On the one hand there are manifest public policy reasons for not giving any person veto power over the availability of evidence. Damaging evidence should not be available only by permission of the person whose case might be hurt by it. On the other hand the statute tells us also to weigh other factors. A litigant should not be forced to surrender an interred body for autopsy as a necessary price for pressing a claim in court.

The law has always believed the dead themselves have rights in the matter. This recognition was expressed for us by Justice Albert in *King v. Frame*, 204 Iowa 1074, 1079, 216 N.W. 630, 633 (1927):

> The depositories of the dead have ever been respected by mankind whether civilized or uncivilized. Most of the commonwealths, including our own, have made it a felony to unlawfully disinter a dead body or disturb the monument or ornamentation where the body rests, and, . . . a due respect for the memory of the dead and for the feelings of the living friends and relatives requires that when a body is once interred it shall so remain unless extreme necessity demands its disinterment.

The statute gives us three criteria with which to weigh these conflicting considerations. I think we are bound to apply them.

In that application it must be conceded there is no public health question in this case and no evidence of feelings by the decedent's relatives.

The trial court denied the application on the basis of its finding that there was unreasonable delay in requesting disinterment. The plaintiff companies urge reversal on the basis of another finding of the trial court: "There is a reasonable likelihood that an autopsy now would either confirm or negative the plaintiffs' claim as to the cause of death." This finding was notwithstanding the trial court's further observation that the passage of time had "decreased any probable benefits" to be gained from an autopsy.

On appeal each party takes the view that the finding it relies upon is controlling. Mrs. Heline believes that the passage of time has automatically ended the company's right to disinterment. The companies argue, on the other hand, that the right to disinterment automatically follows from the trial court's finding that an autopsy would confirm or negative Mrs. Heline's claims concerning the cause of her husband's death.

I think neither of the findings is controlling under section 144.34. The statute does not provide that a disinterment and autopsy will automatically result from finding they would confirm or negative the contentions. Neither does the section bar the ordering of disinterment by reason of the mere passage of time. Both are factors to be considered in weighing the three statutory criteria. *See In re Disinterment of Jarvis*, 244 Iowa 1025, 1028, 1031–32, 58 N.W.2d 24, 25–27 (1953); *In re Disinterment of Tow*, 243 Iowa 695, 700, 53 N.W.2d 283, 286 (1952). But neither *Tow* nor *Jarvis* should be read as superimposing independent criteria upon the statute. The considerations of how informative the autopsy might be and the passage of time are important only to the extent they bear on the three statutory criteria.

I think the trial court applied the wrong rule of law in determining that the passage of time, of itself, would bar the right to disinterment. The trial court should have based its determination on public health, respect for the dead, and the feelings of relatives. In that determination the trial court should have weighed, to whatever extent it found appropriate, the value of the information to be derived from the autopsy, the passage of time before disinterment was requested, and such other factors appearing in the record which shed light on the three statutory criteria.

II. In order to reach its decision the majority necessarily overrules *Tow* and establishes a new scope of review. To do so the majority again looks to the common law and not to our statute. The statute creates a proceeding for disinterment applications which is special and not equitable. I am convinced our holding in *Tow* is right and should not be overruled. Section 611.4, The Code 1979, cited by the majority, is not authority for the majority position. The section merely stands for the proposition that the 1860 Code Revision did not affect existing rules of equitable jurisdiction.

There seems to me to be a unique reason for adhering to the scope of review we prescribed in *Tow*. These proceedings concern matters which, as the majority aptly describes it, are "sensitive." In matters so subjective as respect for the dead and the feelings of relatives I do not think we can match the sensitivity of a trial judge who actually sees the witnesses and observes them while they testify.

III. I should add that if compelled to apply a de novo scope of review to this record I would affirm the trial court. Unlike the trial court I find no reasonable likelihood that anything informative could be learned from an autopsy conducted at so late a time. The companies delayed more than a year before bringing their application to disinter. This delay detracts further from the appropriateness of disturbing the dead.

Because I believe the scope of review is not de novo I would reverse the trial court and remand in order for the trial court to

decide the question anew on the record previously made.

McGIVERIN, J., joins this dissent.

McCORMICK, Justice (dissenting in part).

I concur with divisions II and III of the majority opinion relating to the scope of review and with much of what is said in division I on the merits, but I am unable to agree wholly with the court's construction of section 144.34 or the result.

The statute is complete. I agree with what Justice Harris says in division I of his dissent about that. Disinterments are allowed "only when reasonable cause is shown that someone is criminally or civilly responsible for such death, after hearing, upon reasonable notice prescribed by the court . . . ." Before ordering exhumation the court must give due consideration "to the public health, the dead, and the feelings of relatives." I believe all these statutory criteria are limitations on the right to order disinterment, rather than mere caveats. The legislature made this clear in the statute which was in effect when our prior statutory cases were decided. At that time the statute provided:

> No application for a permit to disinter for the purpose of holding an autopsy shall be granted by the court or state department except under circumstances such as to cause the belief that someone is criminally or civilly liable for such death. *A proper showing shall be made* in every case and due consideration shall be given to the public health, the dead, and the feelings of relatives and friends. *The limitations of this section shall not apply when the application is made by the surviving spouse or next of kin.*

§ 141.25, The Code 1950 (emphasis added). This statute was revised into what is substantially its present form by a comprehensive act relating to vital statistics which was enacted in 1970. *See* 1970 Sess., 63rd G.A., ch. 1081, § 35. By eliminating the last sentence of the prior statute, the legislature extended its restrictive requirements; it did not reduce them.

I believe a "proper showing" must still be made in every case. A preliminary showing is made when evidence is adduced that the disinterment would be likely to produce material and relevant evidence on the issue of whether "someone is criminally or civilly responsible for such death." Nevertheless, disinterment should not be ordered unless the other limitations are also satisfied.

In this case we are concerned about the court's duty to give due consideration to the dead. I agree with Justice Harris that the legislature has manifested an intent that the sanctity of the grave ought not to be disturbed except for the most cogent reasons. Unreasonable delay in seeking disinterment bears on this issue. So should the question of the necessity of obtaining the evidence through disinterment and autopsy. Out of due consideration for the dead, the applicant should be required to demonstrate that the truth of the disputed fact cannot reasonably be obtained through other evidence. *See Roepke v. Rice County, 66 Oil*, 260 N.W.2d 464, 466–67 (Minn.1977).

It is on this point that I reach a factual conclusion different from that of the majority. Under my reading of the record, I find no evidence to show the unavailability of other evidence to determine the cause of death. Was discovery pursued of decedent's next of kin, his treating physician, or the doctor who executed the death certificate? No showing was made that these alternatives or others were exhausted. Therefore I believe there was no showing of necessity.

Even though this reasoning differs from that of the trial court, I would hold the court was right in ruling that due consideration of the dead required denial of the disinterment petition.